# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2017-0485, <u>In the Matter of Ilya Shubentsov and Maureen Shubentsov</u>, the court on March 30, 2018, issued the following order:**

The petitioner having filed redacted appendices on March 14, 2018, his motion to seal case records is granted as to the appendices and denied as to the briefs. The appendices to the petitioner's briefs shall remain confidential. The briefs and the redacted appendices have been placed in the court's public file.

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). Accordingly, the petitioner's motion to waive oral argument is moot.

The petitioner, Ilya Shubentsov (father), appeals the order of the Circuit Court (<u>Foley</u>, J.) denying his motion for contempt against the respondent, Maureen Shubentsov (mother), for allegedly violating an order governing his reunification with the parties' son. He argues that the trial court erred in: (1) not admitting certain exhibits at the contempt hearing; (2) failing to find the mother in contempt for not allowing him access to the child's records; and (3) failing to rule on each of his requested findings of fact. The father also argues that the court's order constituted an unsustainable exercise of discretion. We affirm.

The contempt power is discretionary and the proper inquiry is whether the trial court unsustainably exercised its discretion. <u>In the Matter of Conner & Conner</u>, 156 N.H. 250, 253 (2007). The record shows that in October 2012, while the parties' divorce was pending, the father voluntarily suspended his parenting time with their then three-year-old son. By the time of the final hearing, the father had not visited the child in over a year. In its final decree, the Circuit Court (<u>Lemire</u>, J.) awarded the mother sole residential and decision-making responsibility for the child. The court found that a healthy and safe relationship between the father and son would be in the child's best interest; however, the court noted that the child was "so young when [the father] discontinued contact that they now have virtually no relationship." The court concluded that "there must now necessarily be an appropriate and therapeutic reunification process" before a parenting schedule could be implemented. More than one year later, without an agreement between the parties on a reunification process, the case was assigned to the complex case docket.

Following a series of conferences with the court, the parties agreed upon a reunification process, which the court incorporated into an order.

Pursuant to the agreement, the mother was allowed to relocate with the child to Arkansas, where she had obtained employment in her specialized field. The mother agreed to "work towards supporting a father/son relationship" between the child and his father. The father agreed to "engage in specialized family reunification therapy, as long as necessary in order to transition to 'another individual,' trained in close supervision of visitation, and trusted by [the child] and his parents." The court appointed a master family therapist who, "in consultation with the individual therapists and family reunification therapist, shall decide when the transition shall occur to 'less close' supervised visits." The parties agreed that the child's "progress and adjustment shall determine the pace and methodology of this entire reunification process, which, at this stage, does not yet include [the father's] ultimate goal of unsupervised visits."

In a March 16, 2017 letter to the court, the master family therapist proposed a detailed reunification schedule, starting with Skype sessions between the child and his New Hampshire-based therapist, which the father would join after two weeks. The therapist further proposed that, following the Skype sessions, the father and son engage in extended visits in New Hampshire, leading to overnight visits. In her letter, the therapist advised the court that the mother had demonstrated an unwillingness to participate in this process, based upon her position that the therapist's proposal exceeded the scope of the parties' agreement.

In its April 24, 2017 order, the trial court agreed with the mother, ruling that the master family therapist was effectively seeking a modification of the parties' agreement. The court stated that the parties "need[ed] to decide for themselves what next steps are in the best interest of their child."

The following month, the father filed his motion for contempt, alleging that the mother was not cooperating with the reunification process, and requesting that the court adopt the reunification plan recommended by the master family therapist. Following a hearing, the court denied the motion. The court reiterated its finding that the master family therapist had exceeded her authority, stating that the court had asked her "to direct the process devised by the parties," and that it did not delegate to her the authority to devise a reunification plan. The court found that the mother was in substantial compliance with its order, noting that she had expended over $6,000 in her efforts to comply with it. The court also noted that, although the mother had found a therapist for the child in Arkansas, she kept the child's New Hampshire-based therapist involved and arranged seven "telephonic/Skype sessions" between them. The court noted that the mother paid the master family therapist's retainer, even though she objected to the therapist's

proposed reunification schedule.  The court discharged the master family therapist and asked the parties to provide up to three names for a replacement, which the court would appoint.

The father first argues that the court erred by not admitting the master family therapist's March 16, 2017 letter as an exhibit at the contempt hearing, or allowing her to testify at the hearing, and by discharging the master family therapist.  He also argues that the court erred in not admitting other exhibits, including excerpts from therapists' depositions.  We review these decisions under our unsustainable exercise of discretion standard.  See In the Matter of Hampers & Hampers, 154 N.H. 275, 280 (2006); In the Matter of Conner, 156 N.H. at 252.  To the extent that the father argues that these rulings violated the State Constitution, he has not sufficiently developed his constitutional arguments for review.  Accordingly, we consider them waived.  See State v. Chick, 141 N.H. 503, 505 (1996).

In the reunification agreement, the parties agreed that the therapists "shall all be strictly insulated from any litigation," that they "shall not be called as witnesses," and that "[t]heir records shall not be subpoenaed."  Moreover, the trial reviewed the master family therapist's March 16, 2017 letter, including the part that "identified [the mother] as unwilling to participate in the reunification plan" that the therapist had proposed.  The court addressed this issue in its order, finding that "there was a major disconnect" between the therapist and the mother, which explained the mother's hesitancy.  Based upon this record, we cannot conclude that the trial court unsustainably exercised its discretion by not admitting the father's exhibits or allowing the therapist to testify.  See In the Matter of Hampers, 154 N.H. at 280; In the Matter of Conner, 156 N.H. at 252.

The father next argues that the mother was in contempt of the provision in the agreement providing him with "the right to receive information regarding [the child's] schooling, health, social and personal activities directly from the providers."  Although he asserts that the mother failed to provide him with releases, he has failed to show that her conduct interfered with his right to obtain the information.  See Coyle v. Battles, 147 N.H. 98, 100 (2001) (appellant must provide sufficient record to demonstrate error).

Finally, the father argues that the court erred in failing to rule on each of his requested findings of fact.  The purpose of requiring written findings of fact is to provide a sufficient basis for appellate review.  Geiss v. Bourassa, 140 N.H. 629, 632-33 (1996).  This purpose is fulfilled when the trial court files, in narrative form, findings of fact which sufficiently support its decision.  Id.  We conclude that the trial court's July 12, 2017 narrative order provides a sufficient basis for appellate review; thus, we find no error.  See id.

In its order, the court allowed the parties the opportunity to continue to seek agreement on a reunification process, noting that "[t]he therapeutic process described in [the August 25, 2016 order] remains in full force and effect, with the exception of the appointment of a new Master Family Therapist."  The court advised the parties that "this file will be closed," but that if the parties cannot reach an agreement, "any new filing will finally end the therapeutic process in favor of a fully litigated process."  Based upon this record, we cannot conclude that the trial court's decision to deny the father's motion for contempt constituted an unsustainable exercise of discretion.  See In the Matter of Conner, 156 N.H. at 253.

Affirmed.

Hicks, Bassett, and Hantz Marconi, JJ., concurred.

**Eileen Fox,
Clerk**

4